Kathleen **KAHMANN**, Plaintiff,

v.

Janet **RENO**, Attorney General of the United States; Doris Meissner, Commissioner of the Immigration and Naturalization Service, Defendants.

No. 94–CV–257.

United States District Court,
N.D. New York.

June 25, 1997.

732

Kathleen Kahmann, Middleton, MA, pro se.

Janet Reno, Attorney General of U.S., U.S. Dept. of Justice, Civil Division, Washington, DC (Shawn B. Jensen, of counsel), for Defendants.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION

Presently before the court is plaintiffs petition for a writ of mandamus, sought to compel the defendants to comply with this court's judgment entered on May 31, 1996. Defendants submitted opposition to the petition, and plaintiff replied to the opposition. Oral argument was heard on February 13, 1997, in Utica, New York. At the directive of the court, defendants submitted written opposition to the exhibits proffered by plaintiff at oral argument.

Although familiarity with the May 31, 1996, Memorandum–Decision and Order[1] ("May 1996 order") is assumed, relevant background facts will be recounted.

In 1985 the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon gender occurring in May of that year. In August 1989 the EEOC issued a final determination that the Immigration and Naturalization Service ("INS") had discriminated against the plaintiff based upon her gender. The EEOC ordered a "make whole" remedy, including, but not limited to, back pay plus interest and lost benefits. INS was to have reported its corrective action within sixty days. The INS did not appeal this order.

Seven months after the EEOC ordered the make whole remedy in August 1989, INS tendered back pay to plaintiff, which was an underpayment of approximately $40,000.00. Six months later INS made another payment to plaintiff, constituting the full amount of back pay due. INS continued, however, to refuse to pay interest on the back pay award. Plaintiff finally received the interest due on this back pay award, after filing suit in federal court and receiving a grant of summary judgment against the INS.

1. See *Kahmann v. Reno*, 928 F.Supp. 1209 (N.D.N.Y.1996).

The INS offered plaintiff a position, purportedly in keeping with the make whole remedy ordered by the EEOC. Because of the plaintiff's relocation and various other complications outlined in the May 1996 order, plaintiff was eventually terminated by the INS. In March 1994 plaintiff filed this federal lawsuit alleging that the INS failed to comply with the EEOC make whole remedy, and further, terminated her in retaliation for her attempts to obtain compliance with the make whole remedy.

Following a two-day bench trial, held on November 21–22, 1995, this court found that INS failed to comply with the EEOC remedy by failing to 1) provide plaintiff with a non-discriminatory placement; 2) restore lost benefits, such as insurance, savings plan, and pension plan; and 3) meet the technical reporting requirements for corrective action. Moreover, the defendants retaliated against the plaintiff for attempting to obtain compliance with the EEOC make whole remedy. Accordingly, judgment was entered for the plaintiff and against the defendants, and the defendants were ordered to 1) pay back pay plus interest for the appropriate period, the amount of which was delineated by the court; 2) reinstate plaintiff to a nondiscriminatory placement, at a grade level and location delineated by the court; 3) provide plaintiff the opportunity to elect health and life insurance benefits upon her reinstatement; 4) place appropriate documents in plaintiff's personnel file indicating continuing service since 1985, and expunge references to her EEOC complaint in those records, as delineated by the court;[2] 5) credit plaintiff with appropriate amounts of annual leave and sick leave which she would have accumulated; 6) establish a Federal Employees Retirement System ("FERS") basic annuity account, including INS and plaintiff's contributions;[3] 7) establish a Thrift Savings Plan ("TSP") account for plaintiff, permit plaintiff to elect additional contributions, and deposit the appropriate amounts in the account.[4] *See id.* at 1223–24.

## II. Procedural Posture

█ As an initial matter, defendants oppose plaintiff's petition and seek to strike it as an improper appeal, or deny the petition as without basis in law or fact if the petition

2. The following personnel record changes were delineated:

> 4. Defendants expunge from plaintiff's personnel record any reference to her EEO activity within 15 days from the date of this order;
> 5. Defendants prepare annual performance appraisals and officer corps ratings reflecting a minimum "fully successful" level of performance for the period of May 26, 1985, until the date of plaintiff's reinstatement, and place such documents in plaintiff's personnel file within 15 days from the date of this order;

*See id.* at 1223.

3. The order provided that

> 7a. Defendants establish a FERS basic annuity account for plaintiff and deposit into that account the amount of plaintiff's contribution and the amount of the employer's contribution as set forth above, by August 1, 1996;
> 7b. The amount of plaintiff's contribution to the FERS account which is made by defendants will be set off against the amount awarded to plaintiff thereby reducing the amount of payment to plaintiff required to satisfy the judgment....

*Id.* The order further provided that the calculations for plaintiff's FERS account be made based upon the prior back pay award for that time period and upon $154,036.54 for the 1991 to 1996 time period. *Id.* at 1222.

4. The provisions for plaintiff's TSP account were that

> 8a. Defendants establish a TSP account for plaintiff and deposit in that account one percent (1%) of plaintiff's basic pay as set forth above, by August 1, 1996;
> 8b. Plaintiff notify defendants by certified mail if she elects to contribute an additional percentage of her basic pay to the TSP, and if so the amount of such percentage, within 10 days of the date of this order;
> 8c. If plaintiff elects to contribute to the TSP, defendants will calculate, as set forth above, the amount of plaintiff's elective contribution and defendants' matching contribution and notify plaintiff of same within 10 days after receipt of plaintiff's election;
> 8d. Plaintiff will forward to defendants for deposit in her TSP account the amount of her elective contribution, if any, within 60 days from the date of this order;
> 8e. Defendants will deposit plaintiff's elected contribution and the INS matching contribution in plaintiff's TSP account within five days of receipt;

*See id.* at 1223. The order further provided that the calculations for plaintiff's TSP account be made based upon the prior back pay award for that time period and upon $154,036.54 for the 1991 to 1996 time period. *Id.*

is construed as a motion to alter or amend the judgment. Defendants argue that pursuant to Federal Rule of Civil Procedure 81(b), writs of mandamus are abolished.[5] Defendants further argue that a proper petition for writ of mandamus must be filed in the court of appeals pursuant to Federal Rule of Appellate Procedure 21. Alternatively, if the petition is construed as a motion under Federal Rule of Civil Procedure 59, defendant argues that it must be denied as untimely and improper because plaintiff does not seek a new trial. Finally, if the petition is construed as a motion under Rule 60, defendants argue that it should be denied as seeking relief outside the original judgment.

In reply, the plaintiff, who has prosecuted this action *pro se*, requests that her petition be renamed to conform with any legal requirement which is necessary to provide the relief sought.

To accept defendants' position would be to leave the plaintiff without a remedy and to emasculate the court. It is simply common sense that when a court orders a defendant to provide plaintiff a remedy that is justified and within the law, the court must have the power to assure that the defendant complies with the order. Otherwise, neither the remedy nor the original order would have meaning. Despite the evident veracity of this proposition, defendants' arguments will be considered.

Federal Rule of Appellate Procedure clearly is inapplicable in this situation. Appellate Rule 21 provides an avenue to obtain review of a trial court's action, or to order the trial court to act when it has failed to do so. *See* Fed. R. App. P. 21. Here there is a judgment against defendants with which they allegedly have not complied. The relief sought by plaintiff is an order to defendants to comply with the judgment, which is outside the scope of available relief under Appellate Rule 21.

Title 28, Section 1361 of the United States Code confers original jurisdiction on the district courts "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Also, Federal Rule of Civil Procedure 70 provides in part "[i]f a judgment directs a party ... to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court.... The court may also in proper cases adjudge the party in contempt." *See Gilbert v. Johnson,* 490 F.2d 827, 829–30 (5th Cir.1974)(per curiam)(rule 70 motion in action for unlawful dismissal against Veteran's Administration officials proper; defendants failed to pay money judgment, provide letter of charges, hold hearing, pay salary, and provide tasks commensurate with plaintiffs medical specialty as ordered by the court).

Here, both defendants are employees of the United States or an Agency of the United States. Further, the defendants do have a duty to the plaintiff to comply with the prior judgment.

Additionally, a judgment was previously rendered for the plaintiff and against the defendants. The plaintiff alleges that defendants have failed to fully comply with that judgment. Thus, another person may be directed to comply with the judgment, at the cost of the defendants. *See* Fed.R.Civ.P. 70. Furthermore, in a case such as this where the plaintiff has waited for twelve years for the vindication of her rights, it would certainly be appropriate to hold defendants in contempt should it be found that defendants have failed to comply with the prior order. *See id.*

Accordingly, exercise of jurisdiction over plaintiffs petition for a writ of mandamus is proper. *See* 28 U.S.C. § 1361. Further, it is unnecessary to rename the petition.

### III. *DISCUSSION*

The plaintiff complains that defendants have failed to comply with the May 1996 order with respect to her back pay award,

---

**5.** Defendants also argue that if the petition is brought pursuant to 28 U.S.C. § 1361, it is also improper because defendants have no legal duty to provide relief which defendants aver goes beyond that provided for in the court's judgment. This argument will be addressed, *infra,* in the discussion of the substantive merit of the petition.

employment documents, and retirement accounts. Each will be considered seriatim.

## A. Night Differential and Overtime

■ The INS designated $3,990.02 of plaintiffs back pay award as overtime pay. (*See* Def.'s Opp'n Ex. 3.) Plaintiff now argues that the $3,990.02 is significantly less than the amount she would have earned as overtime, due to the mandatory nature of overtime for immigration inspectors. Plaintiff further argues that she would have earned night differential pay, as immigration inspectors are required to work some evening hours. The plaintiff cites 5 U.S.C. § 5596, which provides that back pay awards due to unjustified personnel actions should include any applicable allowances and differentials which would have been earned but for the unjustified personnel action. The plaintiff requests clarification of her entitlement to overtime and night differential pay for the period of her back pay award.

The defendants argue that any additional night differential and overtime pay is unjustified, as it was not included in the judgment. The defendants again state that the back pay award included $3,990.02 in overtime pay.

First, how the INS concluded that the back pay award included $3,990.02 in overtime pay is mystifying. No overtime was specified in the back pay award. Plaintiff was awarded $154,036.54, plus interest, in basic pay covering the period from December 13, 1991, to June 30, 1996.

Second, the time to set forth all elements of damages is at trial. At trial, the plaintiff failed to adduce evidence regarding night differential and overtime pay.[6] Accordingly, the back pay award was made based upon evidence presented at trial. This back pay award was for basic salary only, and did not include overtime or night differential pay. Further, to now add overtime or night differential elements to plaintiffs back pay award would be tantamount to altering the judgment. Such an alteration would be contrary to the Federal Rules of Civil Procedure.

The back pay award, consisting of basic salary only, with no overtime or night differential pay, must stand.

Finally, TSP and FERS contributions are calculated based upon basic salary. Accordingly, the pay statement provided by INS to plaintiff reflecting $3,990.02 in overtime pay must be corrected to reflect 100% basic salary and zero overtime. Further, the TSP and FERS contributions from the back pay award must be recalculated based upon a correct basic salary amount.

## B. Employment Documents

■ The INS prepared performance appraisals for plaintiff reflecting a "fully satisfactory" performance level. Officer Corps ratings were also prepared reflecting increasing experience levels over the years. However, no rating points were given for classifications such as awards, Officer Corps Activities, and community service. (*See* Defs.' Opp'n Ex. 5.)

Plaintiff argues that the performance appraisal and officer corps rating forms provided by INS for her personnel file were improperly completed, and that some documents needed for promotion or transfer have not been provided. Additionally, plaintiff argues that a mere "fully successful" performance appraisal and the low scores reflected on her officer corps ratings will preclude her from attaining any future promotion or transfer. On the other hand, defendants argue that the records provided completely conform to the order; these records are all that is needed to seek promotion or transfer; and any additional comments cannot be added because, in fact, plaintiff did not work during the period covered by the appraisals.

The May 1996 order required defendants to "prepare annual performance appraisals and officer corps ratings reflecting a minimum 'fully successful' level of performance for the period of May 26, 1985, until the date of plaintiffs reinstatement." 928 F.Supp. at

---

6. The plaintiff did submit supplemental exhibits at oral argument on this petition. Upon motion by defendants, after review, exhibits 4 through 8 were rejected as evidence not before the court at trial which cannot now be considered. These exhibits, which were returned to the plaintiff, may have contained evidence going to night differential and overtime pay.

1223. The performance appraisals provided by INS clearly meet the requirements set forth in the order. To require any rating higher than "fully successful" and an addition of comments regarding plaintiffs work during a period in which she did not actually work would be to require the INS to engage in pure speculation. The court will not engage in such speculation, nor require the INS to do so. *See Sands v. Runyon,* 28 F.3d 1323, 1331 (2d Cir.1994)( "Circumstances are few in which a court can properly order an employer to sweeten a plaintiffs personnel file with praise of the employee's talents, abilities, and work habits—which affirmations might not even be true.") Further, the INS has represented, by sworn affidavit of Elizabeth S. Christie, that no additional documentation is necessary in order for the plaintiff to apply for promotion or transfer. (*See* Def.'s Opp'n Ex. 1.) Accordingly, the defendants are in compliance with paragraph 5 of the May 1996 order.

## C. Retirement Accounts: FERS and TSP

### 1. *FERS*

■ The INS deposited $17,105.31, representing INS's contribution, and $1200.38, representing plaintiffs contribution, to plaintiffs FERS basic annuity account. The deposits to her account were made on or about October 1, 1996. These contributions were based upon the back pay award of $154,-036.54 made according to the May 1996 order. No deposits have been made based upon the prior back pay award for the years prior to 1991. Plaintiff argues that her pension has not been fully restored in that INS failed to make a contribution for the years prior to 1991 and failed to include lost earnings.

Defendants were ordered to establish a FERS basic annuity account for plaintiff, and to deposit both the employer and employee contributions into that account, by August 1,

1996. *See supra* note 3. The amount to have been deposited in plaintiffs FERS account was to be "determined based upon the prior back pay award for the period from May 26, 1985, until September 1989, and upon the lost earnings of $154,036.54 for the period from December 13, 1991, until the date of reinstatement." 928 F.Supp. at 1222.

First, the amounts the INS calculated for December 13, 1991, until reinstatement were based upon an incorrect basic pay figure, due to the allocation of some of the back pay award to overtime pay. Therefore, the calculations must be corrected based upon a basic pay amount of $154,036.54 for the period from December 13, 1991, until July 1, 1996. The INS must immediately deposit both plaintiffs and the INS's additional amounts payable[7] contributions. *See* 5 C.F.R. § 841.505(c). Upon notification of the deposit, which will show the total amount of plaintiff's contributions, plaintiff will forward the amount of her contribution, less $1200.38 already contributed, to the INS. Plaintiffs contribution is deemed to have been deducted from her back pay award.

Second, INS failed to calculate the amount for the period based upon the prior back pay award, from May 1985, until September 1989.[8] (*See* Def.'s Opp'n Ex. 1 ¶ 6.) Ms. Christie postulates that the "INS has every intention of restoring the pension benefits" to which plaintiff is entitled for that period. Id. Intentions aside, the INS has not complied with the order requiring the appropriate amount be deposited into plaintiff's FERS account by *August 1, 1996.* Defendants make no argument about why this calculation and deposit have not been completed, and the court can see no reason for thin failure, other than attempts in general to avoid complying with EEOC and court orders to make this plaintiff whole. *See* 928 F.Supp. at 1221 ("INS did its utmost to avoid compliance" with the EEOC make whole remedy).

---

7. The amounts payable will be the total contributions based upon a basic pay amount of $154,-036.54, less $17,105.31 (INS contribution) and $1200.38 (plaintiff's contribution) which have been deposited.

8. The prior back pay award covered the period from May 1985 until September 1989. However, FERS and the TSP did not become effective until January 1, 1987. Accordingly, plaintiff's FERS and TSP benefits do not begin until January 1, 1987.

Accordingly, INS must deposit both plaintiffs and the INS's contributions for the prior back pay award in order to bring the defendants into compliance with the May 1996 order. *See* 5 C.F.R. § 841.505(c). As with the contributions for the 1991 to 1996 period, upon notification of the deposit, which shows the amount of plaintiffs contribution, plaintiff will forward the amount of her contribution to the INS, and plaintiffs contribution will be deemed to have been deducted from her back pay award.

Third, no interest was included in the amounts deposited. Lack of interest on the contributions disregards the fact that the contributions would have been earning interest from the date of deposit, absent discrimination. It is clear from the May 1996 order that the purpose of the award, with regard to plaintiff's pension benefits as well as in its entirety, was to make the plaintiff whole, that is, to restore her to the position she would have been in but for the discrimination. *See* 928 F.Supp. at 1215–16, 1221–24. Moreover, in order to fully restore plaintiffs pension benefits and make her whole, the earnings which she has lost must be restored. *See Sands*, 28 F.3d at 1329–30; *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1111 (8th Cir.), *cert. denied*, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *United States v. City of Chicago*, 978 F.2d 325, 329–32 (7th Cir.1992); *Pegues v. Mississippi State Employment Service*, 899 F.2d 1449, 1453 (5th Cir.1990); *Nichols v. Frank*, 771 F.Supp. 1075, 1080 (D.Or.1991), *aff'd*, 42 F.3d 503 (9th Cir.1994); *Berkman v. City of New York*, 580 F.Supp. 226, 244 (E.D.N.Y. 1983), *aff'd*, 755 F.2d 913 (2d Cir.1985 ); 5 C.F.R. §§ 1605.10(b)(2)(iii), 1606.1–.15(1996); §§ 1605.4(d), 1606.1–.16 (1997).

An appropriate rate of interest is that earned by the U.S. Treasury securities purchased by the Retirement Fund.[9] The INS must calculate the interest due based upon the rate earned by the U.S. Treasury securities, compounded annually and deposit that amount into plaintiffs FERS account.

### 2. TSP

■ On approximately October 1, 1996, INS contributed $1500.47, purportedly representing 1% of plaintiffs basic pay for the period 1991–1996, for the basic annuity portion of plaintiffs TSP. The INS has not made its contribution for the basic annuity portion of plaintiff's TSP relating to the prior back pay award, for the period 1985–1989.

Plaintiff elected to contribute 10% of her basic pay to her TSP account, and indicated the funds[10] in which she wished to invest her contributions for all the relevant time periods. Because of plaintiffs election to contribute 10%, the INS must make matching contributions of an additional 4% of plaintiffs basic pay.[11]

INS notified plaintiff that of the total amount of her contributions covering the back pay awards, she was "eligible" to authorize a deduction of approximately $7,900.00 from her back pay award for the period 1991–1996.[12] The INS also notified plaintiff

---

**9.** The interest rate earned by the U.S. Treasury securities purchased by the Retirement Fund is a reasonable measure of the earnings on these contributions. This is the rate of interest which would be paid to an employee if the contributions were withdrawn from the FERS Basic Benefit Plan upon leaving government service prior to retirement eligibility. U.S. Office of Personnel Management, RI 90–3 *FERS Transfer Handbook* 12 (June 1987); 5 C.F.R. § 841.602; *see also* 5 C.F.R. § 842.304–.305 (rate of interest charged to certain qualifying separated employees upon return to federal service to "buy back" into FERS); *Rios v. Enterprise Ass'n Steamfitters Local Union 638 of U.A.*, 860 F.2d 1168, 1176 (2d Cir.1988) (uncertainty in back pay award calculations must be resolved against discriminating party).

**10.** TSP participants may choose to invest in three different funds. The C Fund is the Common Stock Index Investment Fund. 5 C.F.R. § 1601.1. The F Fund is the Fixed Income Investment Fund. *Id.* The G Fund is the Government Securities Investment Fund. *Id.*

**11.** Thus, the INS total contribution to plaintiff's TSP account will be 5% of plaintiff's basic pay, representing 1 % for the basic annuity and 4% matching contribution.

**12.** A letter from the INS dated July 17, 1996, gives the amount of $7,608.52, (Kahmann Aff. Jan. 2, 1997, Ex. 10), which plaintiff authorized to be deducted from her back pay award and deposited in her TSP account. However, anoth-

that although her actual eligible contributions for the back pay period totaled over $23,000, only $7,900.00 would be deducted from her back pay award. (Kahmann Aff. filed Jan. 2, 1997, Ex. 10.) INS stated that plaintiff would have "a maximum of thirty-six (36) years to make up the past contributions" by payroll deduction, and the INS's matching contributions would be made at the time of the deduction and deposit. Id. The INS finally stated that "This implementation will result in no change in the amount of money paid by the Agency to you, unless you die or leave Federal Service." Id. The INS has not submitted anything indicating that its 4% matching contribution, relating to plaintiffs deposit of approximately $7,900.00, has been made.

Defendants were ordered to establish a TSP account for plaintiff and deposit the employer's basic contribution of 1 % of plaintiffs basic pay, by August 1, 1996. The plaintiff was also permitted to make elective contributions should she so desire. See supra note 4. A timetable was set forth for plaintiff to make her election and for the deposit, including the employer's matching contribution, to be made in her account by defendants. See supra note 4.

Defendants' actions clearly fail to comply with the May 1996 order in several ways. First, the initial employer contribution of 1 % of plaintiffs basic pay was to have been deposited in plaintiffs TSP account by August 1, 1996. Defendants, however, made the deposit on approximately October 1, 1996, some two months after the deadline. The INS deposited only $1500.47, which purportedly covered the back pay period from 1991–1996. The employer contribution should have been 1% of the back pay award of $154,036.54 for this period. The employer contribution for this period, therefore, was short the differ-

ence between $1540.37 and $1500.47. Additionally, the INS has yet, some nine months after the deadline, to deposit any employer contribution for the period of the prior back pay award, 1985–1989. Accordingly, the defendants must make these contributions to plaintiffs TSP account in order to comply with the judgment against them.

Second, defendants have permitted plaintiff to deposit only approximately $7,900.00 as elective contributions, when they themselves admit that her contributions should total over $23,000.00. Further, it is unclear whether any matching employer contributions have been made. The timetable set forth required INS to deposit plaintiff's elective contributions, and the INS matching contributions, in plaintiffs TSP account approximately eighty-five days after the order, or by approximately August 26, 1996. No provision was made for "future" contributions through payroll deduction, over a period of thirty-six years. The minimal deposit of plaintiffs elective contributions, and the failure to make employer matching contributions are plainly insufficient to comply with the order.

Defendants argue that the Internal Revenue Code, 26 I.R.C. § 402(g)(1), and the Federal Regulations for the Thrift Savings Plan, 5 C.F.R. § 1605.9(d) [13], limit the amount that an employee may contribute to the TSP to $9,500.00 per year, and all contributions must be made by payroll deduction. Thus, the argument goes, plaintiffs maximum contribution to restore the deposits she would have made during the period of discrimination must be derived by subtracting the total deductions from her regular pay check from $9,500.00. For 1997, the defendants argue, plaintiff's contributions based upon her regular pay would be $3,993.00; thus, she will be

---

er letter from INS dated November 6, 1996, refers to $7,911.60 which plaintiff contributed from her back pay award. Id. Ex. 9. A payroll listing dated October 11, 1996, shows deductions of $7,341.09 and $570.51 (totaling $7,911.60) for Thrift Savings. (Defs.' Opp'n Ex. 3.)

**13.** This regulation provides as follows:
(d) In making adjustments in accordance with paragraphs (b) and (c) of this section, agencies

shall ensure that the employee's contribution does not exceed the ceiling on employee contributions for any calendar year found in 26 U.S.C. 402(g)(1). For purposes of making this calculation, employee contributions shall be credited to the calendar year in which they are made.
5 C.F.R. § 1605.9(d)(1996).

eligible to contribute an additional $5,507.00 toward restoration of the pension benefits lost during the period of discrimination.

The speciousness of this argument is demonstrated by defendants' attorney's postulation, at oral argument and in opposition to plaintiff's supplemental exhibits, that under this "implementation procedure," plaintiff will be able to restore her lost benefits in a maximum of twenty-four years, rather than thirty-six years as previously stated (unless, of course, plaintiff leaves government service or dies). Clearly, requiring future contributions, whether over the next one year or twenty years, in order to restore pension benefits lost due to the defendants' blatant discriminatory conduct since 1985, will not make the plaintiff whole. *See Saulpaugh,* 4 F.3d at 145 (purpose of Title VII award is to make plaintiff whole); *Rios,* 860 F.2d at 1175 (same); 5 C.F.R. § 1605.9(a)(1996) (purpose is to make employee whole with regard to Thrift Savings Plan). To even make the argument that future contributions, whether over the next thirty-six or twenty-four years, will make the plaintiff whole is unquestionably ludicrous and borders on insolent.

In this case, for example, plaintiff would lose over $30,000 in pension benefits, representing her contributions and the INS contributions currently due, should she decide to leave federal government service. The same loss would occur should plaintiff meet an untimely death. It is utter nonsense that plaintiff, facing a loss of approximately $30,-000, has nonetheless been made whole.

The admonishment of the regulations, § 1605(d), that the agency must ensure that contributions do not exceed the annual maximum under the Internal Revenue Code must intend that the agency calculate the contributions for each and every year which the back pay award covers and ensure that the contribution for each year does not exceed the maximum.[14] This interpretation is further supported by other sections of the regulations, which provide that the employing agency calculate contributions to the TSP relating to retroactive pay adjustments, such as back pay awards, and forward payment records for each and every pay period for which a TSP contribution should have been made, so that the appropriate contributions and lost earnings may be deposited in the TSP participant's account. *See, e.g.,* 5 C.F.R. §§ 1606.5(a)(1)–(4), 1606.6 (§ 1606.5(a)(1)–(4) apply where agency delays paying employee), 1606.8(a)(lost earnings record must include paydate on which contributions should have been made), 1606.11 (agency required to submit separate lost earnings report for each pay period affected by retroactive pay adjustment and attendant contributions, including agency basic, employee, and agency matching), 550.805(a)(1)(employee deemed to have performed the work during the period

---

**14.** The Federal Retirement Thrift Investment Board Executive Director promulgated new regulations, which became effective on December 27, 1996, on the subject of back pay award corrections. The new regulations provide that to the extent a retroactive pay adjustment causes the employee to exceed the annual contribution limit in the year the adjustment is made, the excess contribution will be carried forward into subsequent years pursuant to a "makeup schedule." 5 C.F.R. § 1605.4(c)(1997). In the event a makeup schedule is necessary for subsequent employee contributions by payroll deduction, agency matching contributions will be made at the time of the employee contribution. *Id.*

Regulations will not be given retroactive effect unless the authority to promulgate retroactive regulations is expressly given by Congress. *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). There is no express authority for the Executive Director of the Federal Retirement Thrift Investment Board to promulgate retroactive regulations. *See* 5 U.S.C. § 8474. Accordingly, the regulations which became effective on December 27, 1996, are not applicable in this case.

Moreover, even if the regulations were retroactive, such regulations are given deference by the court, but do not have the force of law, *New York City Employees' Retirement Sys. v. SEC,* 45 F.3d 7, 12 (2d Cir.1995). See also *Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977)(court not required to follow interpretive regulation). These regulations would not be followed because to do so would deprive plaintiff of her make whole remedy. She is entitled to be made whole now and not twenty-four or thirty-six years from now. The absurdity of these regulations, and a cogent rationale for refusing to follow them, is demonstrated by the facts of this case. If the new regulations were followed, plaintiff would not be made whole until the years 2021 or 2033, respectively, when she would be 63 or 75 years of age.

covered by the corrective action).[15]

Additionally, a necessary premise to defendants' argument is that plaintiffs back pay award be considered as having been earned in the single year in which it was paid. Considering the back pay award as earned in that single year yields even further detriment to the plaintiff, who has already spent twelve years attempting to remedy the defendants' discriminatory conduct. For example, plaintiffs old age benefits under the Social Security system may be significantly reduced. *See* 42 U.S.C.A. §§ 402, 415 (Supp.1997). Plaintiff may also lose eligibility for Social Security Disability benefits or may be eligible only for reduced benefits. *See id.* §§ 413, 415, 423. Conversely, considering the back pay award as earned in a single year may result in a windfall for plaintiff when her FERS retirement annuity is calculated. *See* 5 U.S.C.A. §§ 8401(3), 8415(a)(1996).

Accordingly, in order to comply with the May 1996 order defendants must calculate the amount of contributions plaintiff would have made from 1987 to 1989 and from 1991 to 1996, absent discrimination. Defendants must immediately deposit these contributions in plaintiff's TSP account. *See* 5 C.F.R. § 841.505(c). Further, defendants must calculate the amount of matching contributions the INS would have made from 1987 to 1989 and from 1991 to 1996, and immediately deposit these contributions. Upon receipt of a record showing the amount of plaintiffs contributions, plaintiff must forward that amount, less the amount withheld by payroll deduction in 1996 (approximately $7,900.00), to the INS. This amount is deemed to have been withheld from her back pay award.

Third, defendants have not deposited the earnings on the contributions to the TSP account which plaintiff has lost due to the fact that the discrimination prevented her from making those contributions in the past. Defendants do not argue that lost earnings

are not due. (*See* Defs.' Opp'n.) Indeed, the INS, through Ms. Christie, indicated to plaintiff that the appropriate calculations and deposits, including lost earnings, would be made as set forth in the May 1996 order. (*See* Kahmann Aff. filed Jan. 2, 1997, Ex. 3.) Accordingly, defendants must deposit in plaintiffs TSP account the lost earnings attributable to the retroactive TSP contributions in order to comply with the May 1996 order.

Plaintiff submitted as supplemental exhibits 1–3 calculations of lost earnings for 1987 through 1996 based upon varying fund allocations. Defendants argue, however, that the right to elect TSP fund allocations was not conferred by the original judgment. (*See* Defs.' Opp'n.) Further, in responding to supplemental exhibits 1–3, they state that the time periods of contributions were incorrect and that the regulations, 5 C.F.R. § 1606.11, limit interest lost to the rate of return made by the G fund, while plaintiffs exhibits showed a transfer of contributions among the C, G, and F funds throughout the applicable time periods.

Ordinarily in the event of a separation from service due to unwarranted personnel action, lost earnings would be calculated based upon the latest TSP–1 on file prior to the separation, unless the employee subsequently authorized an interfund transfer, which would then control. 5 C.F.R. §§ 1605.4, 1606.11(c), 1606.13(g). In this case, however, the plaintiff did not have an effective TSP–1 at the time of her unwarranted separation from service.[16]

Shortly after the May 1996 order was issued, Ms. Christie provided to plaintiff a "TSP–1" form upon which to make her initial designation of investment funds, an historical TSP activity report for the appropriate time periods showing each fund's rate of return, and a worksheet upon which she could designate fund selection changes. (*See* Kahmann

---

**15.** The cited sections did not change with the regulations which became effective December 27, 1996.

**16.** Prior to the unwarranted separation from service plaintiff, as an intermittent employee, refused participation in the benefit plans. 928

F.Supp. at 1218–19. However, according to the May 1996 order, because of the different circumstances between intermittent and permanent employment, plaintiff was entitled to elect participation after the EEOC finding of discrimination. Id.

Aff. filed Jan. 2, 1997, Ex. 3.) This worksheet included a space for quarterly designations for the years 1987 through June of 1995, and for six designations per year beginning July 1995 (the instructions indicated that after July 1995 monthly changes of designation could be made).[17] *Id.* Presumably, lost earnings would then be calculated based upon the earnings of each fund during the time periods plaintiff had designated contributions allocated to each fund. Thereafter, however, the INS has ignored the lost earnings portion of the restoration of plaintiffs TSP pension benefits.

Although plaintiff was led by the INS to believe that she would be permitted to review the fund activities for the years covered by the back pay awards, and then designate the fund(s) which would yield her the best lost earnings award, the regulations precluding such retroactive fund selections are persuasive. *See* 5 C.F.R. § 1606.11(c). Thus, lost earnings must be calculated based upon the interest rates earned by the G fund over the appropriate time periods, and the lost earnings records provided by INS must so indicate. INS must deposit those lost earnings in plaintiffs TSP account.

### D. Sanctions

 In proper cases a party failing to comply with a court's judgment may be held in contempt. Fed.R.Civ.P. 70; *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535–36, 16 L.Ed.2d 622 (1966) (inherent power of court to enforce its lawful orders with civil contempt). Where the order is clear and unambiguous, clear and convincing proof of noncompliance is provided, and the non-complying party has failed to diligently attempt compliance in a reasonable manner, the non-complying party may be held in civil contempt. *SEC v. Oxford Capital Sec., Inc.,* 794 F.Supp. 104, 106 (S.D.N.Y. 1992).

 In this case, the May 1996 order was clear and unambiguous, with the possible exception that lost earnings on restored pension benefits were not specifically mentioned.

With respect to lost earnings, however, a short review of the applicable regulations makes clear that lost earnings must be paid in order to restore plaintiff's pension benefits, which she lost as a result of discrimination by the INS. Next, there is no question but that there is clear and convincing proof that the defendants have not fully complied with the May 1996 order.

There is no way it could be said that defendants were diligent in attempting to comply with the portions of the May 1996 order at issue here. While defendants did timely provide plaintiffs performance appraisals and officer corps ratings, they have failed to comply with restoration of pension benefits in many respects, as discussed above.

Not only did defendants clearly fail to comply with the May 1996 order, they come now in opposition to plaintiff's petition for mandamus with arguments which are nothing short of frivolous and unwarranted by law. For example, defendants argued that the petition should be stricken on the grounds that it should have been filed pursuant to Federal Rule of Appellate Procedure 21. Their other grounds for striking the petition are baseless as well, resting on the underlying fallacious supposition that the court has no power to enforce its orders. Another example is defendants' absurd argument that contributing to plaintiffs pension plan over the next twenty-four years to make up the loss resulting from the discrimination will make her whole.

Additionally, defendants and the plaintiff have failed to adequately point out applicable regulations which were necessary to the resolution of the petition. In the defendants' case this failure may be explained by the fact that, at least to some extent, the regulations were contrary to defendants' position. For example, the regulation specifying how to calculate lost earnings on pension benefits could be seen as contrary to defendants' failure to calculate and deposit lost earnings. It is also of some concern that defendants'

---

**17.** These are the intervals of permissible fund designation changes which an employee would have been able to make during those years.

brief devoted only two pages to pension benefits, even though this issue constituted the major portion of the non-compliance of which plaintiff complained.

The court is cognizant of plaintiffs pro se status. While some latitude must necessarily be given to pro se litigants, failure to point out relevant authority cannot be excused, and may result in failure to obtain a remedy rightly due. Litigants', in this case both defendants' and plaintiffs, failure to properly brief issues, provide relevant authority, and refrain from making frivolous arguments severely taxes the already overburdened court system. This is so because despite the litigants' failures, blatant though they may be, a decision must be made which provides plaintiff her appropriate remedy, to be made whole, without bestowing upon her an undeserved windfall.

While the elements of civil contempt are satisfied as to the defendants, in the court's discretion sanctions will not be imposed due to the overall circumstances in the case. Both sides have provided little or no guidance in interpreting and applying the somewhat complicated regulations and procedures required to implement the May 1996 order. In essence, the court has been left to perform tasks more properly left to INS personnel and the plaintiff. The intricate details of making the plaintiff whole should not be the responsibility of the court. However, because the parties have failed so miserably, the court will again set forth, in painstaking step by step detail, what the INS must do in order to bring this matter to closure.

Let there be no mistake, however, that should defendants fail to comply with this order, even in the most minor detail, they will be held in contempt and severe sanctions will be imposed. In a like vein, any future petitions by the plaintiff which are found to be frivolous will also be subject to appropriate civil penalties.

## IV. CONCLUSION

Plaintiffs petition for a writ of mandamus is properly before the court. An award of night differential and overtime pay would constitute an alteration of the judgment and therefore would be improper. Defendants are in compliance with the May 1996 order with regard to plaintiff's employment documents. Defendants are not in compliance with the May 1996 order with regard to full restoration of plaintiff's FERS and TSP pension benefits. Although defendants qualify as civil contemnors, no sanctions will be imposed at this time.

Accordingly, it is

ORDERED, that

1. plaintiff's petition for a writ of mandamus is DENIED as to night differential pay, overtime pay, and employment documents; and it is GRANTED in all other respects as set forth below;

2. defendants prepare a payroll report setting forth a basic pay amount for each and every pay period beginning with the pay period ending May 26, 1985, through September 1989; [18] and beginning with December 13, 1991, through June 30, 1996; [19]

*FERS*

3a. defendants record on each payroll report for January 1, 1987, through September 1989, and December 13, 1991, through June 30, 1996, the following contributions to plaintiff's FERS basic annuity:

i. the amount of the INS agency contribution calculated pursuant to 5 C.F.R. § 841.413;

ii. the amount of plaintiff's employee contribution calculated pursuant to § 841.503;

---

18. For this purpose, the amount of basic pay for each pay period will be determined by dividing the basic pay portion of the back pay award, or $96,176.16, by the total number of pay periods between May 26, 1985, and the end of September 1989.

19. The amount of basic pay to be attributed to each pay period must be determined based upon the schedule of lost earnings set forth in the May 1996 order. See 928 F.Supp. at 1222 for a chart listing lost earnings from December 13, 1991, until June 30, 1996. Each annual lost earnings amount must be divided by twenty-six (26), the number of pay periods per year, to arrive at the amount per pay period.

iii. the amount of plaintiff's lost earnings on the belated basic annuity account contributions, calculated at the rate of interest earned by the United States Treasury securities compounded annually from the date the contributions would have been deposited but for the discrimination. The applicable rate of interest for each year must also be recorded;

3b. defendants deposit the amount of the agency contribution, plaintiffs employee contribution, and the lost earnings in plaintiffs FERS basic annuity account and report the corrections in the form and manner prescribed by the Office of Personnel Management ("OPM") on or before July 15, 1997;

3c. defendants file and serve a copy of each payroll report and a FERS basic annuity account statement for plaintiffs account showing the deposit of plaintiff's contributions, the INS's contributions, and the lost earnings credited to that account, on or before July 22, 1997;

3d. plaintiff remit to the INS the amount of plaintiffs contributions deposited by the INS into her FERS basic annuity account, less $1200.38 which was previously deducted from her back pay award. The amount remitted by plaintiff for her contribution is deemed to have been deducted from her back pay award;

*TSP*

4a. defendants record on each payroll report for the periods January 1, 1987, through September 1989, and from December 13, 1991, through June 30, 1996, the following:

i. the amount of the INS agency basic contribution to TSP of 1% of plaintiffs basic pay;

ii. the amount of plaintiffs elective contribution to her TSP of 10% of her basic pay;

iii. the amount of the INS agency matching contribution to TSP of 4% of plaintiffs basic pay;

iv. the pay date for which the belated contribution would have been made had the discrimination not occurred;

v. the pay date for which the belated contribution was actually made;

vi. that the contributions should be made to the G fund;

4b. defendants forward to the TSP Recordkeeper [20] each payroll report (i.e. lost earnings record) in the manner and the format prescribed by OPM on or before July 15, 1997;

4c. defendants submit to the TSP Recordkeeper, in a lump sum, all missed contributions, including the agency automatic contribution, the employee contributions, and the agency matching contributions for deposit in plaintiffs TSP account, less the $1500.47 contributed by INS on October 1, 1996, on or before July 15, 1997;

4d. the TSP Recordkeeper compute the amount of lost earnings associated with each payroll report (lost earnings record), charge the amount of the lost earnings computed to the INS, and credit that amount to plaintiff's TSP account, pursuant to 5 C.F.R. § 1606.5(a)(3), on or before July 31, 1997;

4e. plaintiff, upon receipt of notification that the contributions and lost earnings have been credited to her TSP account, will forward to the INS the amount of plaintiff's employee contributions, less the amount previously deducted from her back pay award.[21] This amount is deemed to have been deducted from plaintiff's back pay award.

4f. defendants file and serve a copy of each payroll report reflecting the information set forth above, on or before July 15, 1997;

4g. defendants file and serve a copy of the account statement for plaintiff's TSP account showing the contributions and lost

---

**20.** As of the date of publication, the TSP Recordkeeper is the National Finance Center, Office of Finance and Management, TSP Service Office, United States Department of Agriculture, Post Office Box 61500, New Orleans, Louisiana 70161–1500. 5 C.F.R. §§ 1605.9(d)(1), 1606.2.

**21.** This amount should be approximately $7,900.00. *See supra* note 9 and accompanying text.

earnings credited pursuant to this order, on or before August 31, 1997.

IT IS SO ORDERED.